IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH LAURENSAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 10-65 |
| v. ) | Magistrate Judge Maureen P. Kelly |
| ) | |
| LOUIS S. FOLINO, Superintendent; ) | |
| CRAIG HAYWOOD, CO IV; Mr. FRANK, ) | |
| CO III; Mr. J. MATTHEWS, CO II; JACK ) | |
| W. LIGHTNER, CO I; CO I JUSTIN ) | |
| SMITH; Mr. CRAMER, CO I; Mr. FLEMMINGS, ) | |
| CO I; Mr. McGRANE, CO I; FERNANDO ) | |
| NUNEZ, Hearing Examiner; Mr. A. MEGA; ) | |
| Mr. PLUCK, CO I; and Mr. YOURKINS, CO II, ) | Re: ECF No. 55 |
| ) | |
| Defendants. ) | |

## OPINION

**KELLY, Magistrate Judge**

Joseph Laurensau ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), who is currently incarcerated at the State Correctional Institution ("SCI") at Graterford. Plaintiff brings this civil rights suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution while he was incarcerated at SCI Greene. ECF No. 5.

Presently before the Court is a Motion for Summary Judgment ("the Motion") submitted by Defendants. ECF No. 55. For the reasons that follow, the Motion will be granted.

**I.     PROCEDURAL BACKGROUND**

Plaintiff initiated this action on January 9, 2010, bringing a myriad of claims against thirteen Defendants, all of whom were employed at SCI Greene. ECF Nos. 1, 5. On October 29,

2010, Defendants filed a partial Motion to Dismiss, ECF No. 9, which the Court granted in part and denied in part. As a result, five of the Defendants and many of Plaintiff's claims were dismissed from the case. The claims that remain are a Fourteenth Amendment due process claim brought against Defendant Nunez; First Amendment retaliation claims brought against Defendants Smith, Cramer, Fleming, Pluck and Younkin; and Eighth Amendment claims for use of excessive force and for "conspiring to segregate" him brought against Defendants Smith, Cramer, McGrane, Mega and Nunez.

On February 19, 2012, Defendants filed a Motion for Summary Judgment with respect to these claims, ECF No. 55, to which Plaintiff responded on April 30, 2012, ECF No. 65. As such, Defendant's Motion is now ripe for review.

## II.   STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In

2

evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

## III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423

### A. Fourteenth Amendment Due Process Claim

Plaintiff contends that Defendant Nunez, the hearing officer who presided over Plaintiff's misconduct hearings, denied him a liberty interest without procedural due process by finding him guilty of disciplinary infractions and sanctioning him to spend time in disciplinary custody. Defendants argue that Plaintiff is unable to succeed on his claim against Nunez because he is unable to establish the he has a protected liberty interest in the first instance. Alternatively,

Defendants contend that, even if Plaintiff could show that he had a protected liberty interest, Plaintiff was provided all the process that he was due.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

With respect to the first inquiry, it is well established that that the Due Process Clause of the Fourteenth Amendment does not create an inherent liberty interest to remain free from administrative custody. See Hewitt v. Helms, 459 U.S. 460, 468 (1983), *overruled on other grounds as recognized in*, Mackey v. Dyke, 111 F.3d 460, 462 (6th Cir. 1997); Meachum v. Fano, 427 U.S. 215, 223–227 (1976); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population"). See also McKune v. Lile, 536 U.S. 24, 39 (2002) ("[i]t is well established that the decision where to house inmates is at the core of prison administrators' expertise"). Although a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause, the United States Supreme Court has held that, in the state prison context, changes in conditions of an inmate's confinement can result in the deprivation of a constitutionally protected liberty interest only where the liberty interest involved is one of "real substance." Sandin v. Conner, 515 U.S. 472, 477, 484-487 (1995). Such interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (citations omitted).

Determining whether the restraint imposed creates an "atypical and significant hardship,"

4

requires the Court to "consider the duration of the disciplinary confinement *and* the conditions of that confinement in relation to other prison conditions." Cooper v. Diggs, 423 F. App'x 162, 165 (3d Cir. Apr. 11, 2011), *quoting* Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (emphasis added by the Cooper court).

Here, it appears that Plaintiff was initially confined in the Restricted Housing Unit ("RHU") at SCI Greene for approximately one year between January 12, 2008 and January 27, 2009, at which time he was transferred to SCI Fayette.[2] See ECF No. 57: ¶ 10. Upon returning to SCI Green on or about December 3, 2009, it appears that Plaintiff spent another year in the RHU, or until December 16, 2010, when he was transferred to SCI Graterford. Id. at ¶ 11. The United States Court of Appeals for the Third Circuit has found that similar periods of confinement in the RHU are insufficient to trigger constitutional protections. See Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (finding that fifteen months in administrative custody did not constitute an atypical or significant deprivation); Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. Nov. 3, 2011) (finding that neither of Mearin's placements in administrative custody, which were eight months and eleven months, respectively, triggered a constitutionally protected liberty interest).

Plaintiff, however, also claims that while being held in disciplinary custody he was denied meals, showers and recreation. According to Plaintiff, he was denied exercise two times: once on January 8, 2001, and again on April 27, 2008. ECF No. 64: ¶¶ 13, 20; ECF No. 65: ¶¶ 3, 4, 8. With respect to meals, Plaintiff contends that he was denied a meal on January 9, 2008; denied three meals between January 14th and 15th, 2008; and that a hot dog was missing from his

---

[2] The Court has already found that any claims based on acts that occurred prior to January 12, 2008, are barred by the statute of limitations. See ECF No. 36.

5

tray on January 19, 2009. ECF No. 64: ¶¶ 14, 18, 30; ECF No. 65: ¶¶ 3, 6. Although Plaintiff makes two references in his Complaint to being denied showers for up to eight day in April of 2008 and January of 2009, ECF No. 5: pp. 7-9, ¶¶ 4, 6, he has not addressed the issue in his submissions to the Court relative to the instant Motion.

This notwithstanding, the deprivation of meals five times, exercise two times; and showers for up to eight days on two occasions over a two year period of time, does not constitute an atypical or significant hardship in relation to the ordinary incidents of prison life, particularly where Plaintiff has not alleged or established that he suffered any ill effects as a result. See Fortune v. Hamberger, 379 F. App'x 116, 122 (3d Cir. May 7, 2010) (although inmate complained of inability to shower and exercise for fifteen days, he does not allege that he suffered any harm as a result); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that denial of outdoor recreation for thirteen days not cruel and unusual punishment); Brown v. Beard, 2011 WL 1085890, at *14 (W.D. Pa. Mar. 21, 2011), *citing* Ford v. Bd. of Managers of New Jersey State Prison, 407 F.2d 937, 939-940 (3d Cir. 1969) ("[i]nasmuch as Plaintiff does not presently contend that he was denied consecutive meals, nor that he suffered any ill effects from these supposed occasional denials, Defendants are entitled to summary judgment as to this claim"); Frazier v. Daniels, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010) (conduct such as denial of dinner on occasion or verbal antagonizing of plaintiff did not constitute adverse action); Burgos v. Canino, 641 F. Supp. 2d 443, 460 (E.D. Pa.), *aff'd*, 358 F. App'x 302 (3d Cir. Dec. 23, 2009) ("[o]ccasional denial of an exercise period does not rise to the level of an Eighth Amendment violation"). See also Fortson v. Kelchner, 2009 WL 693247, at *5 (W.D. Pa. Mar. 13, 2009) (finding that the DOC's RHU and Special Management Unit regimes are not atypical or unexpected conditions of confinement); Williams v. Klem, 2008 WL

6

4453100, at *9 (M.D. Pa. Sept. 30, 2008) (same); Fortune v. Basemore, 2008 WL 4525373, at *15-*16 (W.D. Pa. Sept. 29, 2008) (same).

Plaintiff also alleges in the Complaint that during his confinement in the RHU he was subjected to two assaults: one on January 14, 2008, by Defendant Mega; and the second on January 9, 2009, by Defendants Cramer and McGrane. ECF No. 5: pp. 7-11, ¶¶ 4, 6, 8, 11, 14. Defendants argue that these assaults do not rise to the level of an atypical hardship because Plaintiff, who was being escorted by corrections officers on both occasions, has admitted to kicking or attempting to kick one of the officers involved in the escort. Because Plaintiff used force against a corrections officer, Defendants contend that the use of force by corrections officers to restrain Plaintiff and bring him into compliance with orders is not at all atypical.

Review of the Complaint, however, shows that, although Plaintiff was being escorted by Defendant Mega on January 14, 2008, contrary to Defendants' assertion, there is no allegation or admission by Plaintiff that he attempted to kick or otherwise accost Defendant Mega. ECF No. 5: p. 10, ¶ 11. Further, while Plaintiff does acknowledge that he kicked Defendant Cramer while being escorted to the law library on January 9, 2008, Plaintiff also alleges that Cramer choked him with both hands. ECF No. 5: p. 8, ¶ 6. It does not appear that restraining Plaintiff to bring him into compliance with orders required choking him.

Although it is not clear to the Court whether these alleged assaults are sufficient, standing alone, to demonstrate that Plaintiff's confinement in disciplinary custody constitutes an atypical and significant hardship, even if Plaintiff were able to establish that he was deprived of a protected liberty interest, his claims against Nunez would still be subject to summary judgment as it appears that Plaintiff received all the process that he was due.

7

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, due process prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon. Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).

Here, Plaintiff takes issue with the first prong of the due process analysis arguing that he was denied due process relative to his misconduct hearings because Defendant Nunez was not an impartial decision maker. ECF No. 5: p. 11, ¶ 15. Plaintiff, however, offers no evidence to support such a finding. Indeed, Plaintiff merely notes in his Brief that Nunez "gives Plaintiff . . . the maximum punishment;" that Nunez used to be a correctional officer; that Nunez eats his meals at the staff dining hall where "these same officers eat;" and that "they *may* have fraternized." ECF No. 65: pp. 2, 3 (emphasis added).

These assertions standing alone, however, do not evidence partiality or bias. See Jones v. Clark, 1986 WL 12412, at *3 (E.D. Pa. Oct. 30, 1986), *citing* Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir. 1974) (rejecting the plaintiff's argument that because the hearing examiner was formerly a corrections officer that he could not qualify as an impartial arbiter). Absent any evidence of involvement in the circumstances at issue or other impropriety on the part of Defendant Nunez during a misconduct hearing, any finding of partiality would be purely speculative. Because Plaintiff's assertions, even if proven, are insufficient to permit a reasonable fact finder to find that Defendant Nunez was not impartial during Plaintiff's misconduct hearings,

and Plaintiff has not otherwise suggested in what manner the process he as afforded at the misconducts hearings was inadequate, it appears he was afforded all the process that he was due and Nunez is entitled to summary judgment.[3]

Finally, the Court notes that, to the extent that Plaintiff claims that Nunez's findings of guilt evidence partiality because the misconducts were "bogus," it is well settled that a prisoner does not have a procedural or substantive due process right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002) (citing with approval Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986); Gravley v. Beard, 2010 WL 3829370, at *4 (W.D. Pa. Aug. 31, 2010). Thus, Plaintiff's allegations of bogus misconducts does not serve to resurrect his due process claims.

### B. First Amendment Retaliation Claims

Defendants also argue that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claims. Defendants contend that Plaintiff is unable to establish that there is a causal connection between any of the misconducts filed against Plaintiff and his having engaged in protected activity. The Court agrees.

In order to establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his

---

[3] Although we need not reach Defendants' argument that the 90-day periodic reviews of Plaintiff's disciplinary confinement that he received subsequent to the misconduct hearings also served to satisfy due process, the Court nevertheless notes that Defendant argument in this regard is misplaced. The 90-day periodic reviews have been found to satisfy due process requirements only if the restraint is for administrative reasons rather than disciplinary reasons. Where, as here, the inmate is being retrained for disciplinary reasons, the procedures required by Wolff apply. See Stevenson v. Carroll, 495 F.3d 62, 70-71 (3d Cir. 2007); Pressley v. Blaine, 352 F. App'x. 701, 708 (3d Cir. Nov. 18, 2009).

constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d at 530. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (the constitutionally protected conduct must be "a substantial or motivating factor" in the decision to discipline the inmate.) To constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Id., *quoting* Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Once these criteria are met, the burden shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser v. Horn, 241 F.3d at 333.

In this case, Defendants do not dispute that filing grievances and/or lawsuits constitute protected activity for purposes of a First Amendment retaliation claim; they do dispute, however, whether Plaintiff is able to demonstrate that he was retaliated against because of any grievances or lawsuits that he may have filed.

Indeed, review of the Complaint shows that Plaintiff makes no reference whatsoever to any lawsuits he has filed,[4] and the only reference to a grievance is that "Haywood . . . denie[d] 2 of my grievances." ECF No. 5: p. 11, ¶ 14. Moreover, Plaintiff only actually uses the word "retaliation" once in his Complaint where he states that Smith denied him meals "to retaliate for Mega." Id. at p. 7, ¶ 4. These assertions fall woefully short of demonstrating that Plaintiff was retaliated against for filing lawsuits and/or grievances.

---

[4] The one exception appears in paragraph 7, in which Plaintiff claims that Defendants Matthews and Haywood filed bogus misconducts against him "in retaliation of my pleadings to the courts." ECF No. 5. Plaintiff, however, also alleges that the referenced misconducts were filed to cover up an assault and not in order to retaliate against him. Moreover, the misconducts to which Plaintiff refers were issued in 2006, and, thus, any claims based on them are barred by the statute of limitations. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (finding that the plaintiff's Section 1983 are subject to a two year statute of limitations). See also Footnote 2, *supra*.

Although Plaintiff asserts in his Brief and Declaration filed in opposition to Defendants' Motion that he received misconducts in retaliation for filing grievances and lawsuits, it is well established that a plaintiff may not amend the Complaint through the brief filed in opposition to a motion to dismiss. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988).

Nevertheless, even if the Court were to consider Plaintiff's belated argument that he received misconducts in retaliation for filing grievances and lawsuits, he has not identified any specific grievances that precipitated the retaliatory conduct, nor indicated when they were filed, against whom they were filed, or that the any of the individuals against whom Plaintiff filed the grievances had knowledge that Plaintiff had submitted the grievances when the misconducts were issued. See ECF No. 65: pp. 6, 7. Plaintiff's failure to allege these facts, much less provide evidence in support thereof, precludes a finding that any grievances Plaintiff may have filed were a substantial or motivating factor in the decision to issue the misconducts.

Similarly, with respect to any lawsuits Plaintiff may have filed, he has not identified any specific suits in his Brief or Declaration other than the instant action. All of the misconducts at issue in this case, however, were necessarily filed prior to his action being initiated. It therefore follows that they could not have been filed as a result of Plaintiff having filed this suit. See St. Louis v. Morris, 573 F. Supp. 2d 846, 853 (D. Del. 2008) (because the only grievances of record occurred after the plaintiff was removed from his kitchen job, they "could not have been the activity that substantially motivated the adverse action against him").

Moreover, as pointed out by Defendants, Plaintiff has only filed two other lawsuits with this Court: Civil Action No. 2:11-cv-1054, which was also filed after the misconducts at issue were lodged against Plaintiff and, thus, cannot provide the basis for Defendants alleged

11

retaliation; and Civil Action No. 2:08-cv-1599, which was filed on November 20, 2008. The latter suit, which purported to be a class action brought by twenty-two plaintiffs, was dismissed prior to service "without prejudice to Plaintiff's ability to refile individual complaints against the Defendants." Id., ECF No. 13: p. 2. Plaintiff not only declined to file an individual complaint but the only Defendant in this suit that was a named defendant in that action is Defendant Nunez. Plaintiff, however, has not brought a retaliation claim against Nunez here. Nor has Plaintiff pointed to any evidence that would even remotely suggest that there is a causal connection between Plaintiff having filed the suit and any of the misconducts about which he complains.

Finally, the Court notes that to the extent Plaintiff has made references in his Brief to specific *misconducts* he has received, they do not serve to bolster his retaliation claims. Review of Plaintiff's Brief shows that, with three exceptions, he has either failed to argue or otherwise suggest that the misconducts were issued in retaliation for filing grievances, or he has expressly stated that the misconducts were filed for reasons other than retaliation. Specifically, Plaintiff represents that misconducts were issued to deny him exercise time; to cover up corruption or sexual harassment; to cover up an extortion scam; to retaliate against him for calling Defendant Pluck "a rat;" and that he was set up by another inmate. See ECF No. 65, *generally*.

The only misconducts that Plaintiff cites as having been issued in retaliation for filing grievances are Nos. A830065, A830066, and A824346. ECF No. 65: pp. 6, 7. The first two misconducts, however, were issued on January 8, 2008, and January 9, 2008, respectively, and any claims based on those misconducts are barred by the statute of limitations. See Footnote 2, *supra*. With respect to misconduct No. A824346, Plaintiff alleges that the misconduct was filed by Defendant Haywood, who has been dismissed from this action. As such, Plaintiff is unable to

12

establish that Defendants retaliated against him for engaging in protected activity and Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.[5]

C. **Eighth Amendment Claims against Defendant Cramer**

Defendants also argue that Plaintiff's allegations that Defendant Cramer verbally harassed and threatened him cannot survive summary judgment because such conduct does not rise to the level of a constitutional violation.

Plaintiff's complaints against Defendant Cramer revolve around two incidents. The first occurred on December 27, 2008, while Plaintiff was "housed at Psychiatric Observation Cell (P.O.C.)" following a suicide attempt. Plaintiff alleges that Cramer harassed him by kicking on the door to wake him up and tease him; by making "gestures of hanging up and gagging with his hands to his throat," saying, "[y]ou should hang yourself KKK style; and by rubbing his buttocks saying, "[k]iss my pearly white ass." ECF No. 5: p. 8, ¶ 6.

The second incident occurred on January 19, 2009, at which time Plaintiff allegedly confronted Cramer about the hot dogs missing from his food tray. According to Plaintiff, Cramer responded by saying, "I gave them hot dogs to Hitler you nigger jew;" "You should have been 6 million and 1 Jews dead in the Holocaust;" and "Hang yourself KKK style." Id.

---

[5] Indeed, summary judgment in favor of Defendants would be warranted even if Plaintiff had been able to demonstrate a prima facie case of retaliation. The United States Court of Appeals for the Third Circuit has held that a finding of guilt of the underlying misconduct necessarily establishes that the same action would have been taken even if the plaintiff had not engaged in the protected activity and precludes a finding that the misconduct was issued in order to retaliate against him. Bonaparte v. Beck, 441 F. App'x 830, 832-33 (3d Cir. Aug. 3, 2011); Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. Mar. 25, 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2103 (2011) ; Williams v. Sebek, 299 F. App'x 104, 106 (3d Cir. Nov. 17, 2008). See Israel v. Superintendent of SCI Fayette, 2009 WL 693248, at *11 (W.D. Pa. Mar. 13, 2009). See also Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997) (the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim"). The record shows, and Plaintiff does not dispute, that he was found guilty of at least some of the charges brought in each of the misconducts he was issued. See ECF No. 58-1: pp. 44-92. Indeed, being found guilty of the misconducts is the basis for Plaintiff's due process claim against Defendant Nunez. As such, Plaintiff is unable to succeed on his retaliation claims.

As offensive as these remarks are, verbal threats or taunts, or even the display of white pillowcase hoods, Nazi salutes, and the posting of an offensive picture, have been held insufficient to constitute a violation of the Eighth Amendment. See Dunbar v. Barone, 2012 WL 2775024, at *1 (3d Cir. July 10, 2012); Aleem-X v. Westcott, 347 F. App'x 731, 731-32 (3d Cir. Oct. 9, 2009); McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001); Robinson v. Danberg, 729 F. Supp. 2d 666, 678-79 (D. Del. 2010) ("[v]erbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983"); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights (taunts and threats are not an Eighth Amendment violation). Thus, to the extent Plaintiff's Eighth Amendment claims against Cramer are based on verbal threats and harassment, they too are subject to summary judgment.[6]

### D. Conspiracy Claims

Finally, Defendants argue that, to the extent that Plaintiff purports to bring a claim of conspiracy against Defendants, his conclusory allegations in the Complaint coupled with the absence of any facts to support his claim require the Court to grant summary judgment.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir.1999), *superseded by statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). Establishing the existence of a conspiracy requires concerted

---

[6] The Court notes that Plaintiff has also alleged that, following the second incident on January 19, 2009, while Defendants Cramer and McCrane were escorting Plaintiff to the law library, Cramer pinched Plaintiff causing him to kick Cramer. Plaintiff alleges that, as a result, he was "tackled to the ground face first," and that Cramer choked him with both hands. ECF No. 5: pp. 8, 9, 11, ¶¶ 6, 8, 14. See ECF No. 64: ¶¶ 31, 32; ECF No. 65, p. 6. This claim brought against Cramer for use of excessive force in violation of the Eighth Amendment is not the subject of Defendants Motion and, thus, remains viable.

14

action and the existence of an agreement. Watson v. Sec'y Pa. Dep't of Corr., 2011 WL 2678920, at *5-6 (3d Cir. July 8, 2011), *citing* Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir.1998). Thus, in order to state a plausible claim for a civil rights conspiracy claim the plaintiff must plead facts with particularity, including: (1) the conduct that violated the plaintiff's rights, (2) the time and place of conduct, and (3) the identity of the officials responsible for the conduct. Adee v. Beard, 2012 WL 383622, at *7 (M.D. Pa. Feb. 6, 2012), *citing* Oatess v. Sobolevitch, 914 F.2d 428, 432 n. 8 (3d Cir. 1990). Further, because "'the linchpin for conspiracy is agreement,'" Watson v. Sec'y Pa. Dep't of Corr., 2011 WL 2678920, at *6, *quoting* Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992), a plaintiff must "allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a federally protected right." Adee v. Beard, 2012 WL 383622, at *7. See Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970) ("[t]o constitute a conspiracy, there must be a 'meeting of the minds'").

Here, Plaintiff's Complaint contains five assertions regarding an alleged conspiracy: that Defendants Fleming, Smith and Lightner conspired to falsify a misconduct report, ECF No. 5: p. 9, ¶ 10; that Defendant Mega conspired "with others" to falsify misconduct reports, id. at p. 10, ¶ 11; that Defendants Pluck conspired with Defendant Younkin to falsify a misconduct report, id. at p. 11, ¶ 13; that Defendant Haywood conspired with Matthews to falsify a misconduct report, id. at p. 11, ¶14; and that Nunez conspired with Mega relative to terminating a misconduct hearing for "taking off the spit hood," id. p. 11, ¶ 15. The Complaint, like Plaintiff's Declaration and Brief, is otherwise devoid of any allegations or facts regarding these alleged conspiracies.

15

Indeed, Plaintiff has utterly failed to argue, or point to evidence that would support a finding, that there was a meeting of the minds, an agreement or a plan devised between any of the Defendants to violate Plaintiff's constitutional rights. Plaintiff's conclusory assertions that Defendants "conspired" are legally insufficient to state a claim for conspiracy.

Moreover, Plaintiff's perceived conspiracies all revolve around Plaintiff's claim that Defendants filed "bogus" misconduct reports against him. As previously discussed, however, a prisoner, does not have a either an Eighth or Fourteenth Amendment right to be free from being falsely or wrongly accused of misconduct. See Smith v. Mensinger, 293 F.3d at 653-54 (citing with approval Freeman v. Rideout, 808 F.2d at 953; Booth v. Pence, 354 F. Supp. 2d 553, 559 (E.D. Pa. 2005), *aff'd*, 141 F. App'x 66 (3d Cir. July 21, 2005); Gravley v. Beard, 2010 WL 3829370, at *4. Thus, even if Defendants had agreed and/or planned to file false misconduct reports against Plaintiff, they did not conspire to deprive Plaintiff of a constitutional right. Thus, Plaintiff is unable to establish a conspiracy under Section 1983, thereby entitling Defendants to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [ECF No. 55] will be GRANTED.[7]

An appropriate Order will follow.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: 28 September, 2012

---

[7] Thus, the only claims remaining in the case are Plaintiff's Eighth Amendment excessive force claims brought against Cramer, McGrane and Mega.

cc: Joseph Laurensau
DS-8331
SCI Graterford
Box 244
Graterford, PA 19426

All counsel of record by Notice of Electronic Filing